Rebecca Peterson-Fisher (State Bar No. 255359)
E-mail: rpetersonfisher@liulawpc.com
Jennifer L. Liu (State Bar No. 279370)
E-mail: jliu@liulawpc.com
**THE LIU LAW FIRM, P.C.**
800 Menlo Avenue, Suite 102
Menlo Park, CA 94025
Main: 650.461.9000
Fax: 650.460.6967
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIANA KEESING, MEGAN FROST, SOPHIE MOLINS, AMITA GONDI, AVA JIH-SCHIFF,<br><br>Plaintiffs,<br><br>v.<br><br>THE BOARD OF TRUSTEES OF THE LELAND J. STANFORD UNIVERSITY, AKA STANFORD UNIVERSITY<br><br>Defendant. | Civil Action No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Liana Keesing, Megan Frost, Sophie Molins, Amita Gondi, and Ava Jih-Schiff ("Plaintiffs), by and through their attorneys, The Liu Law Firm, P.C., allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this action against Defendant The Board of Trustees of The Leland J. Stanford University, aka Stanford University ("Stanford"), to challenge Stanford's ongoing sex discrimination in its athletics program, including its decision to cut five women's sports teams and one co-ed sports team after the 2020-2021 academic year.

2. In July of 2020, Stanford announced plans to eliminate 11 of its 36 sports teams, ostensibly because it cannot continue to financially support its existing program. These planned cuts will eliminate over 100 athletic participation opportunities for female athletes, leaving Stanford with a program that disproportionately allocates athletic participation opportunities to men in violation of Title IX.

3. The Plaintiffs are members of five women's teams slated for elimination: fencing, field hockey, lightweight rowing, squash, and synchronized swimming. Each Plaintiff has trained and sacrificed for years — most since childhood — to achieve the level of performance required to compete at the varsity level for a National Collegiate Athletic Association ("NCAA") Division 1 school. Each Plaintiff was actively recruited by other colleges and chose to enroll at Stanford because it boasts both a world-class athletic program and academics of the highest caliber. If Stanford implements the planned cuts, each of them will be deprived of the opportunity to train and compete at an elite level at a critical time in their athletic careers. For Olympic hopefuls on the teams Stanford plans to cut, completing their Stanford educations will likely mean giving up their Olympic dreams.

4. Title IX of the Education Amendments of 1972 is a federal law that prohibits sex discrimination in any educational program receiving federal financial assistance. 20 U.S.C. § 1681(a). Title IX's implementing regulations require schools to provide "equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c). The U.S. Department of Education Office for Civil Rights and numerous federal courts have interpreted Title IX and its

implementing regulations to require universities to effectively accommodate the interests and abilities of both sexes in their athletic programs.

5. To provide effective accommodation under Title IX, a university must demonstrate that either (1) it provides athletic participation opportunities to male and female students in numbers substantially proportionate to male and female enrollment, or (2) it has a "history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of [the underrepresented] sex," or (3) it "fully and effectively accommodate[s]" the interests and abilities of the underrepresented sex in its program. Office for Civil Rights' 1979 Policy Interpretation, 44 Fed. Reg. 71,413, 71,418 (Dec. 11, 1979); *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 965 (9th Cir. 2010). Stanford cannot satisfy any of these standards.

6. Stanford already fails to provide athletic participation opportunities to male and female students that are substantially proportionate to their respective enrollment. In fact, Stanford manipulates its count of female athletic opportunities in its reporting to the federal government under the Equity in Athletics Disclosure Act ("EADA") to create the illusion of substantial proportionality, while actually providing a disproportionate number of athletic participation opportunities to male students. Stanford achieves this illusory Title IX compliance in part by counting each female member of the co-ed sailing team twice — once as a member of the "women's sailing team," and again as a member of the "co-ed sailing team." In fact, there is only one co-ed sailing team which regularly practices together, and the female members of that team enter into some competitive events open only to women. Each of these female athletes is receiving only one genuine athletic participation opportunity under Title IX and should be counted once, not twice. *See Biediger v. Quinnipiac Univ.*, 928 F. Supp. 2d 414, 440-41 (D. Conn. 2013).

7. Stanford cannot demonstrate a "history and continuing practice of program expansion which is demonstrably responsive to the developing interest[s] and abilities" of women because it is reducing athletic opportunities for women, not expanding them.

2
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

8. Finally, Stanford cannot demonstrate that the interests and abilities of the women are fully and effectively accommodated while cutting existing women's sports teams. Plaintiffs are interested and able to continue to compete at a varsity level in the sports they have devoted many years of their lives to.

9. Plaintiffs intend to seek a preliminary injunction to stop Stanford from implementing its discriminatory decision to eliminate their teams, and ultimately a permanent injunction requiring Stanford to comply with Title IX.

## PARTIES

*Plaintiff Liana Keesing*

10. Plaintiff Liana Keesing is a sophomore at Stanford majoring in electrical engineering, and the current team captain of Stanford's fencing team. She currently resides in McLean, Virginia.

11. Plaintiff Keesing grew up in Virginia, where she began fencing when she was 10 years old.

12. Plaintiff Keesing began competing in regional tournaments at the age of 11, and in national events at the age of 13. At 13, she won the Virginia state championship for her age group, and at 15, she won the U.S.A. Fencing Virginia U20 Championship.

13. In 2017, at age 16, Plaintiff Keesing fenced for the United States at the Maccabiah Games in Israel, earning a bronze medal individually and a silver medal as part of Team U.S.A. In 2019, she was the Region Six Junior Champion in the U.S.A. Fencing Competition.

14. Plaintiff Keesing was recruited by Stanford, CalTech, and the Air Force Academy. She chose Stanford in large part because she believed it offered strong institutional support for its fencing program, which had produced two Olympians in 2016.

15. Plaintiff Keesing suffered a concussion shortly before her first academic year at Stanford and was not medically cleared until just before competition began.

16. In January 2020, Plaintiff Keesing returned to Stanford to serve as team captain for the fencing team. Unfortunately, in February 2020 she suffered a case of viral myocarditis and

was unable to compete. Plaintiff Keesing has now recovered and intends to continue serving as a team captain and to compete in the 2021-2022 season if fencing continues at Stanford.

17. If Stanford's decision to cut the fencing team is implemented, Plaintiff Keesing will never have the opportunity to compete as a varsity fencer for Stanford in full health.

*Plaintiff Megan Frost*

18. Plaintiff Megan Frost is a sophomore at Stanford majoring in management science and engineering, and a member of the Stanford field hockey team. She currently resides in Palo Alto, California.

19. Plaintiff Frost is originally from North Carolina, where she began playing field hockey when she was 13 years old.

20. At the age of 14, Plaintiff Frost made the Amateur Athletic Union Junior Olympics.

21. The summer before she began high school, Plaintiff Frost entered U.S.A Field Hockey's Futures program, the pipeline for the Olympic team.

22. As a high school athlete, Plaintiff Frost was named the North Carolina Player of the Year every year for four years and led her team to victory at state championships in her sophomore, junior, and senior years.

23. Several universities recruited Plaintiff Frost beginning in her freshman year of high school. Plaintiff Frost ultimately choose Stanford over, among others, the University of California at Berkeley, Northwestern University, and Wake Forest University, all of whom offered her comparable scholarships.

24. In her freshman year at Stanford, Plaintiff Frost made the all-rookie team for her conference, and Stanford's field hockey team made the sweet sixteen at the NCAA Championships.

25. In the summer after her freshman year, Plaintiff Frost made the under-21 National Team.

26. In Plaintiff Frost's sophomore year, Stanford's field hockey team made the elite

1  eight in the NCAA Championships.

2  27.  Plaintiff Frost intended to continue training with the National Team and hoped to
3  eventually represent the United States at the Olympics.  However, because the under-21 National
4  Team trains only once a month and during summers, Stanford's decision to cut field hockey will
5  make it virtually impossible for Plaintiff Frost to maintain the level of athletic performance
6  required for Olympic hopefuls.

7  28.  Plaintiff Frost now must choose between completing her Stanford education or
8  transferring to another school that offers varsity field hockey.  However, there is no guarantee, or
9  even likelihood, that she will be offered a scholarship as a transfer student.  If Plaintiff Frost is to
10 have a realistic opportunity to compete in the Olympics, her only alternative is to move to
11 Virginia Beach, Virginia, where the National Team trains, and attend college online.

*Plaintiff Sophie Molins*

13 29.  Plaintiff Sophie Molins will be an incoming first-year student at Stanford in 2021-
14 2022, and a member of the varsity lightweight rowing team if it continues to exist.  Plaintiff
15 Molins currently resides in Wilmette, Illinois.

16 30.  Plaintiff Molins attended high school in Wilmette, Illinois, and rowed for her high
17 school team for four years.  As a sophomore, she raced in a 2V boat and took 1st place in the
18 Midwest Scholastic Rowing Championship, and 2nd place in the Scholastic Rowing Association
19 of America ("SRAA") National Championship.  In her junior year, she raced in a 1V boat and
20 placed second in the Midwest Scholastic Rowing Championship, again going on to compete in
21 the SRAA Nationals.  The SRAA National Championship competition was cancelled in Plaintiff
22 Molins' senior year due to the COVID-19 pandemic.

23 31.  Plaintiff Molins was recruited by Stanford, Georgetown University, and the
24 Massachusetts Institute of Technology.  She chose Stanford because of the strength of its
25 lightweight rowing team, which has a history of producing Olympians, Stanford's academic
26 program, and the level of academic support Stanford provides to student-athletes.

32. Plaintiff Molins expected varsity lightweight rowing to be one of the primary components of her college experience.

33. As a result of Stanford's decision to eliminate the varsity lightweight rowing team, Plaintiff Molins will be deprived of the opportunity to compete in the nation's most elite rowing competitions and of the support she expected to receive as a student-athlete.

*Plaintiff Amita Gondi*

34. Plaintiff Amita Gondi is a sophomore at Stanford majoring in computer science, and a member of Stanford's squash team. She currently resides in Stanford, California.

35. Plaintiff Gondi has been playing squash since the age of 8. She began playing squash competitively in India when she was 10 years old.

36. Plaintiff Gondi is a two-time Indian Junior National Champion. In her sophomore year of high school, she placed third at the U.S. Junior Open.

37. In 2018, Plaintiff Gondi was the No. 1 ranked Junior female squash player in Asia.

38. Plaintiff Gondi was heavily recruited by Harvard, which is the No. 1 ranked squash team in the United States. Stanford's squash team is currently ranked No. 6 in the country. Plaintiff Gondi chose to attend Stanford because she felt that Stanford offered a more ideal balance between competitive squash and academics, and that the university culture was a better fit for her.

39. In 2020, Plaintiff Gondi captured the consolation title of the Holleran Cup at the College Squash Association ("CSA") National Individual Championships.

40. As a result of Stanford's decision to discontinue squash, Plaintiff Gondi will lose the opportunity to continue to train and compete at the varsity level in her senior year, making it virtually impossible for her to become a professional squash player.

*Plaintiff Ava Jih-Schiff*

41. Plaintiff Ava Jih-Schiff is a sophomore at Stanford majoring in electrical engineering and a member of Stanford's synchronized swimming team. She currently resides in Stanford, California.

6
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

42. Plaintiff Jih-Schiff is originally from Danville, California, where she started synchronized swimming when she was 8 years old.

43. Plaintiff Jih-Schiff made the 11-12 National Team at age 11, and subsequently made the 13-15 National Team.

44. In 2016, at the age of 15, Plaintiff Jih-Schiff earned a team gold medal and gold medal for duet at the Junior Pan-American Championships.

45. Plaintiff Jih-Schiff began preliminary recruitment conversations as a junior in high school with Stanford and Ohio State University. Ohio State University was at the time home to synchronized swimming's reigning national champions. Plaintiff Jih-Schiff committed early to Stanford because it offered everything she wanted — a top synchronized swimming team, an incredible academic program, and institutional support for student-athletes.

46. Plaintiff Jih-Schiff's first competitive season with Stanford's synchronized swimming team was cut short due to the COVID-19 pandemic.

47. This past year, Plaintiff Jih-Schiff and the Stanford synchronized swimming team won the U.S. Collegiate National Championship, sweeping the titles in all of the events.

48. When Stanford recruited Plaintiff Jih-Schiff, it represented itself as an institution that truly valued her sport. Plaintiff Jih-Schiff now feels profoundly betrayed by Stanford's decision to cut synchronized swimming.

49. Synchronized swimming has been integral to shaping the person Plaintiff Jih-Schiff is today. She wholeheartedly loves her sport and expected to compete for two more years at the varsity level for Stanford. As a result of Stanford's decision to cut synchronized swimming, she will be deprived of the opportunity to continue to train and compete at the varsity level in her junior and senior years of college.

*Defendant The Board of Trustees of The Leland Stanford Junior University*

50. Stanford University is a private university located in Santa Clara County, California.

51. Stanford receives federal funding and is subject to Title IX.

7
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**JURISDICTION AND VENUE**

52. This Court has jurisdiction over this action under 28 U.S.C. § 1331.

53. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

**FACTUAL ALLEGATIONS**

54. Stanford currently has 36 varsity-level sports teams. In July 2020, Stanford announced that it would cut 11 of those teams after their 2020-21 seasons, ostensibly because it can no longer financially sustain all 36 teams.

55. Stanford plans to cut 5 women's teams: fencing, field hockey, squash, lightweight rowing, and synchronized swimming. In addition, Stanford will cut sailing, which it counts as 2 teams: women's sailing and co-ed sailing. Finally, Stanford will also cut 4 men's teams: fencing, rowing, volleyball, and wrestling.

56. The EADA requires Stanford to report the number of athletic participation opportunities it provides to each sex for each academic year. Stanford's most recent EADA report, for the 2019-2020 year, is attached hereto as Exhibit A ("2019-2020 EADA Survey.")

57. Stanford's 2019-2020 EADA Survey reports a total of 439 male athletic participation opportunities and 423 female athletic participation opportunities. Thus, Stanford reported that out of 862 total athletic participation activities, 50.9% were allocated to male athletes and 49.1% were allocated to female athletes. Conversely, Stanford's undergraduate enrollment in 2019-2020 was 49.6% male and 50.4% female.

58. The number of participation opportunities that would need to be added for women in order for a university to achieve exact proportionality is termed the "participation gap." When a university's participation gap is large enough to sustain a viable varsity team, it fails Title IX's substantial proportionality test. *See Biediger*, 928 F. Supp. 2d at 440.

59. Stanford's 2019-2020 EADA Survey indicates a participation gap of 24, large enough to sustain all of the women's teams slated to be cut except lightweight rowing, which Stanford reported had a squad size of 29.

8
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

60. However, the participation gap is actually larger than 24 because Stanford double-counted its female sailors in its EADA Survey. Stanford reported a women's sailing team consisting of 14 women *and* a co-ed sailing team consisting of 9 men and 14 women. Ex. A at 4-5. In reality, there is only one team, and Stanford counted the same 14 women twice. For that reason, Stanford's unduplicated count, which counts each athlete only once, better reflects the true participation gap.

61. Stanford's 2019-2020 EADA Survey reports an unduplicated count of 416 male athletes and 391 female athletes, indicating 51.5% of athletic opportunities were allocated to male athletes and 48.5% to female athletes. Based on the unduplicated count, the participation gap in 2019-2020 was 32.

62. According to Stanford's 2019-2020 EADA Survey, the women's teams slated for cuts had squads ranging in size from 11 to 29, and only two teams had squads larger than 20. Ex. A at 4-5. There is no question that the participation gap was large enough to sustain at least one viable varsity team for female athletes in the 2019-2020 academic year.

63. Stanford's 2020-2021 EADA Survey is not yet available and is likely to have some anomalies due to the COVID-19 pandemic. However, the participation gap revealed by the 2019-2020 EADA Survey is consistent with past data. It stands to reason that the participation gap that existed in 2019-2020 continued into 2020-2021, since Stanford did not add any women's teams in 2020-2021.

64. Now, instead of remedying the existing participation gap, Stanford plans to widen the gap by cutting more female athletic participation opportunities than male participation opportunities. According to the squad sizes reported in Stanford's 2019-2020 EADA Survey, the planned cuts will reduce male athletic participation opportunities by 97 and female participation opportunities by 112.[1]

---

[1] This calculation counts the 14 female sailors Stanford counted twice in its 2019-2020 EADA Survey only once, and includes the 7 female rowers Stanford reported as part of the men's rowing team in the tabulation of female participation opportunities to be eliminated.

9
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

65. Stanford's planned cuts will result in a substantially larger participation gap in the 2021-2022 academic year.  Female enrollment at Stanford grew by half a percentage point to reach 50.9% in 2020-2021, consistent with an overall trend of increasing female enrollment over the past decade.  Assuming 2021-2022 undergraduate enrollment will also be 50.9% female, the participation gap will be 44 using the duplicated count and 52 using the unduplicated count after the cuts are implemented.

66. Stanford's 2019-2020 EADA report reflects the following squad sizes for the Plaintiffs' teams:  15 for fencing, 23 for field hockey, 29 for lightweight rowing, 11 for squash, and 13 for synchronized swimming.  There is no indication these squad sizes will deviate substantially in 2021-2022 from their sizes in 2019-2020.  Therefore, each of the Plaintiffs' teams would fit squarely within the projected participation gap, demonstrating that Stanford's planned cuts violate Title IX.

67. Stanford should be enjoined by the Court from implementing its discriminatory plan to disproportionately eliminate athletic opportunities for Plaintiffs and other women.

**First Claim for Relief**

**Violation of Title IX (20 U.S.C. § 1681(a))**

68. Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

69. Defendant determines the number of athletic participation opportunities it will offer to male and female students by choosing which sports teams it will offer and deciding how many athletes it will allow to participate on those teams.

70. Defendant fails to provide female students with an equal opportunity to participate in varsity intercollegiate athletics in violation of Title IX and 34 C.F.R. § 106.41(c)(1).

71. As described in paragraphs 57-61, Defendant currently does not offer substantially proportionate athletic opportunities to male and female athletes.  Female athletes are substantially underrepresented in Defendant's athletic program.

72. Defendant does not have a history and continuing practice of program expansion

which is demonstrably responsive to the developing interests and abilities of women.

73. Defendant's program does not fully and effectively accommodate the interests and abilities of women because Defendant is discontinuing several women's teams and co-ed sailing, all of which have female athletes, including Plaintiffs, who are able and willing to continue to compete at a varsity level in their sports.

74. Defendant has publicly announced its intention to worsen existing sex inequality in its allocation of athletic participation opportunities by eliminating five women's teams and one majority-female co-ed team: fencing, field hockey, squash, lightweight rowing, synchronized swimming, and co-ed sailing.

75. As a result of Defendant's discriminatory actions, Plaintiffs have been denied and/or imminently will be denied their civil rights to receive equal opportunities to participate in varsity intercollegiate athletics.

76. Plaintiffs have already suffered emotional harm as a result of Defendant's decision to discontinue their teams, and they will suffer irreparable injury if that decision is implemented.

77. Plaintiffs are entitled to a preliminary injunction restraining Defendant from eliminating their teams, damages, declaratory relief, and a permanent injunction requiring Defendant to comply with Title IX's equal accommodation requirements.

**PRAYER FOR RELIEF**

On their claims for relief, Plaintiffs seek the following:

A. An order declaring that Defendant has engaged in sex discrimination in violation of Title IX;

B. A preliminary injunction barring Defendant from eliminating Plaintiffs' sports teams pending trial;

C. An award of damages to be determined at trial;

D. A permanent injunction barring Defendant from failing to provide substantially proportionate athletic participation opportunities to male and female student-athletes;

E. Continuing jurisdiction over this action to monitor Defendant's compliance with

11
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

this Court's orders;

F.    An award of costs and attorney fees, pursuant to 42 U.S.C. § 1988(b) and any other applicable provision of law; and

G.    Any other relief as is proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to a jury trial.

DATED: May 12, 2021                              Respectfully submitted,

**THE LIU LAW FIRM, P.C.**

By:  */s/ Rebecca Peterson-Fisher*
Rebecca Peterson-Fisher
Jennifer L. Liu
**THE LIU LAW FIRM, P.C.**
800 Menlo Avenue, Suite 102
Menlo Park, CA 94025
Main: 650.461.9000
Fax: 650.460.6967

Attorneys for Plaintiffs